GreeN, Judge,
delivered the opinion of the court:
The plaintiff, who is an officer in the United States Army, brings this suit to recover increased rental and subsistence allowances to which he claims to be entitled on account of his dependent mother, Anna B. Emerson. The plaintiff was paid rental and subsistence allowances as an officer with dependents up to June 30, 1924, but since that date he has received only the allowances which pertain to an officer without dependents. The amount which he seeks to recover is the difference between the allowance which he is now receiving and the allowance which he claims he should have been paid on account of his dependent mother, from the date last mentioned up to the time when judgment may be rendered. The issue in the case is whether plaintiff was the chief support of his mother during the period involved.
The defense presented is that the plaintiff’s mother has real estate of a total assessed value of $12,530, and corporate stock from which she has an annual income of $294; and it is urged in argument that she should have sold the real estate and bought an annuity with the proceeds, or used what could be obtained from it in some manner for her support.
*616 Counsel for defendant appear to treat the assessed valuation of the land as showing its actual value, and if the plaintiff’s mother had property of that amount in addition to the income which she received from her personal property the argument on behalf of the defendant would have much force. But testimony showing the assessed valuation cannot be received by the court to show the actual value of property unless supported by other evidence, as it is a matter of common knowledge that property is very often assessed at an amount which is quite different from its actual value. On the other hand, we think the burden was on the plaintiff in this particular case to show that the plaintiff’s mother was not able to obtain her chief support out of the property which she owned.
No testimony was introduced in the case to show the actual value of the real estate during the period involved, and it seems to be contended on behalf of the defendant that for this reason the plaintiff’s case is lacking in proof. There is, however, abundant evidence that the real estate could not be sold during the period involved. The principal witness for the plaintiff testified that he had lived in the county where this land was located and had been engaged there in the real-estate business for about fifty years; that he was familiar with timberland, had sold a good deal thereof, and in a general way was acquainted with the particular tract in controversy. He said that in his opinion the tract of timberland owned by the plaintiff’s mother could not be sold at all and that there had been no sales of timberland in that county for several years. Another qualified witness stated that the land had no market value that he knew of, and that at the request of the plaintiff he had made inquiry of the only parties that he could think of who might be interested to the extent of making an offer for it and found none. There was other testimony that the land liad a speculative value only, and, in substance, that there was no railroad in the immediate vicinity, no buyers except the big lumber companies, that the timber was on, very steep ground, and, as one witness expressed it, he did not think “ there is a chance in the world to sell it at the present time.” A witness who *617 had in the past engaged in the business of selling timberland in that vicinity testified that he had had the land for sale and tried hard to sell it, making continued efforts but never had an offer, although Mrs. Emerson had executed and placed in escrow a deed for 120 acres of it at the sale price of $1,275.
As to the town property, it seems to be conceded that the evidence showed that it was not salable. The Commissioner found as to both the timberland and the town property that there was no sale for it. The defendant urges that this finding is incorrect, but we think it fully justified by the evidence, and that it shows that market conditions were not such that the real estate could have been sold to purchase an annuity or used in any way for the support of plaintiff’s mother, as the testimony also shows that she was not receiving any income therefrom.
The fact that the real estate could not be sold does not show that it had no value whatever. Probably it had some value, although there was testimony that the town property could not be given away. But this does not affect the case if it could not be used to support or help support the plaintiff’s mother, and if it could not be sold during the period involved it was useless for that purpose.
The findings show that the plaintiff’s mother is now over seventy-nine years of age and during the entire period of this claim has been, and now is, an invalid, suffering from chronic infectious arthritis, which condition requires the constant services of an attendant and regular professional medical attention; that she is unable to dress or bathe herself, and cannot arise from a chair without assistance, and tend to show that living expenses properly chargeable to the support and care of plaintiff’s mother amount to $260 a month. Considering the condition of the mother as above set forth and her station in life, we do not think this sum is unreasonable. But if a reasonable amount were only $100 a month, the conclusion of the case would be the same, for her other income was less than $25 a month. It has cost plaintiff $260 a month for the care and support of his mother, and even if we found that this sum was considerably *618 more than was necessary he would still be entitled under the law to receive the additional rental and subsistence allowances which he claims.
From what has been said above, it is clear that the plaintiff was the chief support of his mother and is entitled to recover the difference between the rental and subsistence allowances which he has been receiving and that which he should have received as an officer with a dependent mother from July 1, 1924, up to the date of this judgment, January 9, 1933. Judgment will be entered accordingly upon the receipt of a report from the General Accounting Office showing the amount due, computed for this period in accordance with the rank and service of the plaintiff as stated in the findings of fact.
Whaley, Judge; LittletoN, Judge; and Williams, Judge, concur.
Booth, Chief Justice, took no part in the decision of this case on account of illness.